UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY B. COOPER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 13 C 2643 ) |
| JACOB LEW, Secretary, Department of the Treasury, | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Cooper was employed by the Internal Revenue Service ("IRS") until her recent retirement. She maintains that while she worked at the IRS, her supervisors harassed her and denied her a job promotion in retaliation for her filing EEOC complaints against the IRS in August 2001 and February 2002. In response to the alleged retaliation, Plaintiff filed a third EEOC complaint in November 2009. In January 2013, the EEOC issued a final decision regarding that 2009 complaint, and Plaintiff filed her complaint in this court in April 2013, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.SC. § 2000e-3(a). The government has moved for summary judgment [55], arguing that only one of the eight adverse actions Plaintiff alleges—her non-promotion—is actionable as a timely "adverse employment action" for purposes of a Title VII retaliation claim, and that Plaintiff has failed to produce evidence demonstrating that the IRS's stated reasons for denying her promotion are pretextual. For the reasons discussed below, the government's motion is granted.

## BACKGROUND

### I. Plaintiff's Prior Protected Activity

Since 1986 and until recently, Plaintiff worked as a "disclosure specialist" at the IRS in Chicago, where her duties included processing documents relating to required disclosures of information, including Privacy Act requests, FOIA requests, and court orders. (Def.'s R. 56.1

1

Statement [57], hereinafter "Def.'s 56.1," at ¶ 1; Cooper Dep. 11:2–4, Ex. 2 to Def.'s 56.1 [57-2].)  In 2000, Plaintiff applied for a higher-paying position within the IRS.  (Def.'s 56.1 ¶ 3.) She was not selected for that position and, in response, filed an EEOC complaint in August 2001, alleging that her manager Joe Aceto had discriminated against her.  (*Id.*)  In February 2002, Plaintiff filed another EEOC complaint, naming Aceto and another manager, Don Gavey, as the officials who discriminated against her.  (*Id.* ¶ 4.)  Though the court has not received or reviewed copies of either complaint, the court understands the August 2001 complaint to have alleged that Plaintiff's supervisor discriminated against her on the basis of race and sex in failing to promote her (*see* Cooper Dep. 18:3–14), and the February 2002 complaint to have alleged retaliation for her filing the August 2001 complaint.  (*See id.* at 18:15–17.)  The parties disagree about how the discrimination claim initiated in 2001 was resolved: the government contends that Plaintiff's case, which proceeded to federal district court, was terminated for her failure to pay the required filing fees, while Plaintiff insists that she paid the fees but that the case was improperly omitted from the district court's calendar.  (*See* Pl.'s Resp. to Def.'s 56.1 [62] ¶ 3.)[1] Regarding Plaintiff's second complaint, though, the parties agree that the case was resolved by a settlement, under which Gavey would no longer supervise her.  (Def.'s 56.1 ¶ 4.)

## II. Alleged Retaliation

In the 2009 EEOC complaint attached to the complaint in this case, and in the affidavit supporting that complaint, Plaintiff describes eight separate adverse actions taken by her IRS managers, allegedly in retaliation for her prior EEOC complaints.  There is no dispute that Stephanie Browne, Plaintiff's supervisor from 2003 until 2011, was aware of Plaintiff's prior

---

[1] The court's own review of the docket shows that Plaintiff filed her lawsuit on August 25, 2005, and Judge Suzanne Conlon of this court dismissed it just six days later with a brief order that reads, in full, as follows: "MINUTE entry: Plaintiff's application to proceed *in forma pauperis* is denied. Plaintiff does not qualify as a pauper. She shall pay the filing fee by 9/15/05. Plaintiff's motion for appointment of counsel is denied. Civil case terminated." (Docket Entry No. 5 in *Cooper v. Snow*, No. 05 C 4919 (Sept. 1. 2005).  There is no record in the docket of Plaintiff having paid the fee at any point, but the court's determination that Plaintiff did not qualify for *in forma pauperis* status is not an adjudication on the merits.

EEOC complaints. (Pl.'s R. 56.1 Statement [64], hereinafter "Pl.'s 56.1," at ¶ 2.) As Plaintiff testified, during an interaction on an unspecified date, she expressed displeasure with something at work, and Browne responded by telling her to "file an EEO like you did before." (*Id.*) Plaintiff asserts that the retaliatory activity began in August 2005 when Browne mistakenly accused Plaintiff of sending out the wrong documents in response to a FOIA request. (*Id.* ¶ 4.) When Browne presented a letter to Plaintiff regarding her purportedly mistaken response, Plaintiff asserts that she corrected Browne and that Browne responded by snatching the letter out of Plaintiff's hand and refusing to let her finish reading it. (*Id.*) The government denies that Browne accused Plaintiff of making a mistake or that Browne snatched a letter from Plaintiff. (Def.'s Resp. to Pl.'s 56.1 [68], hereinafter "Def.'s Resp. to Pl.'s 56.1," at ¶ 4.)

A second alleged episode of retaliation occurred a year later in August 2006. (Pl.'s 56.1 ¶ 5.) According to Plaintiff, she had finished reviewing documents in response to a subpoena and had received clearance to release the documents, but Browne told Plaintiff that she had privacy concerns about releasing the material. (*Id.*) When Plaintiff questioned the basis of those concerns, Browne yelled at her and threatened to write her up for insubordination. (*Id.*)

Plaintiff claims that Browne yelled at her and threatened to write her up again in October 2008. (Pl.'s 56.1 ¶ 6; Cooper Aff. of 11/10/09, hereinafter "Cooper EEOC Aff.," at 44, Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J. [65].) According to Plaintiff, Browne entered Plaintiff's office and unlocked a cabinet containing files for closed cases. (Pl.'s 56.1 ¶ 6.) Browne threw the files in a basket and "very loudly told [Plaintiff]" that she was going to write her up if she failed to take all of the closed case files out of her cabinet and file them away. (*Id.*) The government denies that Browne threatened or harassed Plaintiff. (Def.'s Resp. to Pl.'s 56.1 ¶ 6.)

Plaintiff also complains that Browne unfairly assigned her tasks and denied her certain privileges. Specifically, Plaintiff claims that, in August 2008, Browne told her that she would be required to serve as a "floater" at the disclosure help desk telephone line (that is, she would be

3

required to fill in for the primary help desk respondents when they were unavailable) every week, though Browne had never assigned that duty to any other employee. (Pl.'s 56.1 ¶ 8.) Browne, however, insists that she never demanded that Plaintiff change her hours to act as a "floater" but merely suggested the possibility to accommodate the help desk's staffing needs. (Browne Aff. 58, Ex. 3 to Def.'s 56.1 [57-2].) Later that year, in October 2008, Browne refused to allow Plaintiff to act as an on-the-job instructor for a new disclosure specialist, despite the fact that Cooper had acted in that capacity for new specialists many times previously. (Pl.'s 56.1 ¶ 7.)

Browne denied Plaintiff an additional privilege on January 22, 2009 when she declined to grant Plaintiff a "3% performance award."[2] (*Id.* ¶ 9.) Plaintiff had not received such an award from 2003 to 2009 (Def.'s 56.1 ¶ 13), but she claims to have met the criteria for the award as of January 2009 because she had an outstanding performance rating, had served at least three years at her performance level, and had not received a prior 3% award within the previous 156 calendar weeks.[3] (Pl.'s 56.1 ¶ 9.) Browne, however, maintains that in January 2009 she had sole discretion to grant the award and that she used her own criteria to determine who should receive it. (Def.'s 56.1 ¶ 13; Browne Aff. 54.) According to Browne, Plaintiff failed to meet Browne's criterion that the awardee "be able to serve as a role model for other employees." (Browne Aff. 54.) Specifically, Browne faulted Plaintiff for relying on the "examination coordinator" to retrieve records for her, a practice which Browne believed hindered Plaintiff's ability to respond timely to FOIA requests. (*Id.*) Browne cited this factor in a conversation she

---

[2] Neither party explains what the 3% performance award is. The court understands the award to be a type of employee bonus offered at the manager's discretionary recommendation to reward good performance. (*See* Browne Aff. 54–55.) But the parties do not specify, for example, whether the "3%" refers to a percentage increase in the employee's salary, or whether the bonus is temporary or constitutes a permanent increase to the employee's base salary.

[3] Plaintiff's EEOC affidavit discusses her understanding of the current criteria for the award, but she concedes that "in the past," management had discretion in granting or denying the award. (Cooper EEOC Aff. 43.)

had with Plaintiff on the day Brown decided not to recommend Plaintiff for the award. (Pl.'s 56.1 ¶ 10.) Plaintiff asserts that during this conversation, Browne threatened her, telling her that if she "continue[d] to use an Exam Coordinator and not go directly to the Revenue Agent working the case, [she would] never get a 3% award." (*Id.*) The government denies that Browne ever made such a threat. According to the government, Plaintiff subsequently received the 3% award, along with all other eligible employees, as part of a settlement between her union and the IRS. (Def.'s 56.1 ¶ 13.)

In July 2009, Plaintiff applied for another promotion and was again denied, this time for the position of Senior Disclosure Specialist. Six people applied for the position, and Plaintiff was one of four applicants selected for an interview. (*Id.* ¶ 15.) Browne, Jacqueline Nielson (an IRS government liaison), and Darlene Stewart (an IRS disclosure manager) conducted the interviews. (*Id.* ¶ 16.) The interviewers asked each candidate the same 10 questions and scored their responses. (*Id.* ¶ 17.) After the interviews, Browne, Nielson, and Stewart made a hiring recommendation to Annette Jones, the IRS program manager responsible for making the final selection. (*Id.*; Jones Aff. 64–67, Ex. 10 to Def.'s 56.1 [57-3].) Jones selected Suzette Darby for the position because each of the three interviewers gave Darby's interview answers the highest scores. (Def.'s 56.1 ¶ 18; Jones Aff. 66.) The government contends, based on interview notes from Darby's and Plaintiff's respective interviews, that "Darby's answers were specific and direct, while [Plaintiff's] answers were vague and incomplete." (Def.'s 56.1 ¶ 18.) Plaintiff, however, insists that her answers to the interview questions were, in fact, detailed and complete (Pl.'s Resp. to Def.'s 56.1 ¶ 18), and she notes that she and Darby had the same high performance ratings on their performance appraisals. (Pl.'s 56.1 ¶ 12.) When Plaintiff later asked the interviewers which questions they believe she answered poorly, they never responded to her. (Pl.'s Resp. to Def.'s 56.1 ¶ 18.) In addition, Plaintiff claims that Darby, who was also a disclosure specialist under Browne's supervision, lacked "disclosure experience, background, [and] technical knowledge." (*Id.* ¶ 19.)

5

The parties do not dispute that Darby had not engaged in prior protected EEO activity at the time she was awarded the position. (Pl.'s 56.1 ¶ 13). Plaintiff asserts in a declaration that "Annette Jones was aware that I had previously filed EEO complaints," but there is no foundation for that assertion or other evidentiary basis to support it. (Cooper Decl. ¶ 22, Ex. F to Pl.'s Resp. to Def.'s Mot. for Summ. J. [65].) Jones herself denies that she was aware of the prior complaints and maintains that she only selected Darby because Darby received the highest interview scores. (Jones Aff. at 66–67.)

At her deposition, Plaintiff testified that her employer engaged in the activity described above to "force [her] to retire" because "[t]hey wanted her out." (Cooper Dep. 50:2-6.) Her managers wanted her out, she testified further, because she "knew how the work should be done and they couldn't just come in and do their own thing, which they were accustomed to doing." (*Id.* at 50:7–20.) Perhaps recognizing that this characterization of her managers' motivations is inconsistent with her claim, Cooper now offers another explanation. (Pl.'s Resp. to Def.'s 56.1 ¶ 20.) In response to the government's Local Rule 56.1 Statement of Material Facts, Cooper states by declaration that "Browne and Annette Jones harassed [her] and wanted to force [her] out in retaliation for previously filing EEO complaints against Joe Aceto." (Cooper Decl. ¶ 21.)

### III. Plaintiff's 2009 Complaint

Before filing her EEOC complaint and prior to her August 2009 non-promotion, Plaintiff sought EEO counseling on January 28, 2009. (Def.'s 56.1 ¶ 21.) Plaintiff subsequently filed a complaint with the EEOC, which outlined the above allegations and which she later amended to include her non-promotion claim. (*Id.*) Following the EEOC's final decision in favor of the IRS, Plaintiff brought suit in this court and attached to her complaint the EEOC opinion denying her request for reconsideration of its decision. (*See* Compl. [9].) Her complaint itself does not specifically identify the nature of Plaintiff's claims, but from a review of the attached EEOC opinion, the court concludes that Plaintiff is alleging that the IRS retaliated against her for her

previous EEO activity. In its answer to Plaintiff's complaint, the government stated as one of its defenses that Plaintiff is barred from recovering for alleged acts for which she did not timely seek counselor contact or exhaust her administrative remedies. (Def.'s Answer [17] 1.) Though Plaintiff was represented by counsel for a period of time during this proceeding, the court granted counsel's motion to withdraw at an early stage, and Plaintiff has since proceeded *pro se*.

## DISCUSSION

**I.     Standard of Review**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To defeat a summary judgment motion, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict" in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant may not rest upon the mere allegations of her pleading but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* In analyzing a summary judgment motion, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014).

**II.    Retaliatory Non-Promotion**

Title VII prohibits employers from "discriminat[ing] against" any employee or applicant for employment "because [the employee] has made a charge, testified, or participated [in a Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). An employee claiming retaliatory discrimination may proceed using "either the direct or indirect methods of proof." *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). Plaintiff's claim relies solely on the indirect method. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 9.)

Under the indirect method, a plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Coleman*, 667 F.3d at 845. To establish a prima facie case for

7

retaliation in the failure to promote context, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she applied for and was qualified for the position sought; (3) she was rejected for that position; and (4) the employer granted the promotion to another applicant who did not engage in statutorily protected activity, and who was not better qualified than the plaintiff. *Burks v. Union Pac. R. Co.*, 793 F.3d 694, 700 (7th Cir. 2015). If the plaintiff can establish a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for denying the promotion to the plaintiff. *Id.* Should the employer articulate a legitimate nondiscriminatory reason, the plaintiff can defeat summary judgment by offering evidence that the employer's stated reasons are mere pretext to cover up the true, retaliatory motive. *Id.*

Plaintiff has produced evidence that, when viewed in the light most favorable to her, establishes a prima facie case that the IRS' failure to promote her to the senior disclosure specialist position was retaliatory. The government does not dispute that Plaintiff engaged in prior protected activity when she filed EEOC complaints in 2001 and 2002, that she applied and was rejected for the position of senior disclosure specialist several years later, or that she was qualified for that position. In addition, Plaintiff has demonstrated that she and Darby, the successful applicant for the position, occupied the same position and had equivalent ratings on their performance appraisals. (Pl.'s 56.1 ¶¶ 11–12.) A reasonable jury could infer from these facts that Darby was not better qualified for the position than Plaintiff. Thus the government has the burden of offering a legitimate, non-retaliatory reason for the decision to promote Darby over Plaintiff.

To meet that burden, the government offers a straightforward reason for Darby's selection: that she performed better in her interview for the job than did Plaintiff and the other candidates. Each interviewer gave Darby the highest score among all applicants, and Jones testified that she selected Darby because of those high marks. (Jones Aff. 65.) Poor interview performance is a legitimate, non-discriminatory explanation for failing to promote an employee.

8

*See Baron v. City of Highland Park*, 195 F.3d 333, 340–41 (7th Cir. 1999) (including poor performance in oral interview as one of several "compelling, legitimate, and non-discriminatory reasons" for failing to promote employee).

Plaintiff can nevertheless proceed if she offers evidence that the reason offered by the government is insufficient or not worthy of belief. She has failed to carry that burden here. Plaintiff argues that the government's reasons for hiring Darby must be pretextual because she, in fact, provided detailed and complete answers to the interviewers' questions, and the interviewers never told her later which specific answers they found unsatisfying. (Pl.'s Resp. to Def.'s 56.1 ¶ 18; Pl.'s Resp. to Def.'s Mot. for Summ. J. 11.) But a "plaintiff's contention that [she] is the better candidate for a vacancy constitutes nothing but the employee's own opinion as to [her] qualifications." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). Plaintiff's own assertions about her interview performance cannot create an issue of material fact concerning the IRS' motivation because "an employee's perception of his own performance cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities." *Id.* (internal quotations omitted). In addition, though the interviewers did not respond to Plaintiff's request for specific interview feedback, the government has produced their interview notes, and Plaintiff has pointed to nothing in those notes or in the interviewers' deposition testimony suggesting a retaliatory motive. The court cannot draw an inference of discriminatory motive simply on the basis of Plaintiff's own beliefs about her interview performance or from the interviewers' silence in response to her follow-up requests. "Where the employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate," Plaintiff can create a fact issue only if she can show that her own qualifications were so superior that no reasonable person could disagree that she was better qualified. *See Brown v. Health Care Serv. Corp.*, 606 Fed. Appx. 831, 834 (7th Cir. 2015), *citing Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 813 (7th Cir.2005); *Millbrook,* 280 F.3d at 1180. She has not done so here.

Plaintiff also asserts that the government's justification for her non-promotion is pretextual because her former manager Joe Aceto, against whom she brought the prior EEOC complaints, manages Browne and Jones, and purportedly encouraged them to retaliate against Plaintiff. Plaintiff provides no evidence to support this assertion, apart from Browne's singular comment that Plaintiff should "file an EEO like [she] did before." (Pl.'s 56.1 ¶ 2.) The court cannot infer from this single comment, which shows only that Browne was aware of Plaintiff's prior protected activity, that Browne and Jones acted on Aceto's behalf to retaliate against Plaintiff or that Aceto urged them to do so.[4] In fact, Jones, who made the final hiring selection, testified that she was unaware of Plaintiff's prior protected activity (Jones Aff. 64–67), and Plaintiff has offered nothing other than an unsupported statement in her declaration to rebut that testimony (Cooper Decl. ¶ 22). That alone is not enough to create a genuine issue of triable fact. *See Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 753 n.6 (7th Cir. 2006) ("[C]onclusory opinions, unsupported by specific facts, are insufficient to create a genuine issue of triable fact.")*.*

Because Plaintiff has failed to demonstrate that the IRS' proffered reason for promoting Darby over her was pretextual, her claim for retaliatory failure to promote cannot survive summary judgment.

### III.  Claims Based on Plaintiff's Remaining Allegations

In addition to her non-promotion in the summer of 2009, Plaintiff alleges that her employer engaged in seven other retaliatory actions: (1) Browne's snatching a letter from her in August 2005 after mistakenly accusing her of making an error, (2) Browne's August 2006 yelled

---

[4] Without providing specific evidence to demonstrate either that Aceto had any retaliatory animus toward Plaintiff or that he had any significant influence over her immediate supervisors, Plaintiff cannot prevail on a so-called "cat's paw" theory of discrimination. *See Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011) ("With *sufficient evidence*, we permit juries to draw an inference that another employee's impermissible bias infected a decision when a plaintiff is able to show that the biased employee had some degree of influence over the ultimate decision.") (emphasis added). A prerequisite of a successful "cat's paw theory" is evidence of "the impermissible bias of [the] non-decisionmaking co-worker." *Id.*

threat to write up Plaintiff for questioning Browne, (3) Browne's October 2008 yelled threat to write up Plaintiff for failing to remove closed case files from her cabinet, (4) Browne's August 2008 statement to Plaintiff that she would be required to act as a "floater" at the disclosure help desk telephone line, (5) Browne's October 2008 refusal to allow Plaintiff to act as an on-the-job instructor for a new employee, (6) Browne's refusal to grant Plaintiff a performance award in January 2009, and (7) Browne's January 2009 threat that Plaintiff would never receive a performance award if she continued to rely on an examination coordinator to retrieve records for her.

Plaintiff cannot survive summary judgment on any claim relating to these remaining seven allegations. To the extent Plaintiff's complaint states a single claim for retaliatory harassment or creation of a hostile work environment—based collectively on these seven allegations plus her non-promotion—she appears to have waived that claim by failing to respond in her brief to the government's argument against it. *See Bruce v. Ghosh*, No. 11-CV-3138, 2015 WL 1727318, at *14 (N.D. Ill. Apr. 13, 2015) (collecting cases and stating that "failure to respond to an argument made in a summary judgment motion results in waiver"). Though the court recognizes that *pro se* litigants like Plaintiff should be afforded certain procedural protections, *pro se* litigants "are in general subject to the same waiver rules that apply to parties who are represented by counsel." *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995).

Even if Plaintiff did not forfeit her hostile work environment claim, however, it would fail on the merits. To establish such a claim, she would have to show that her supervisors' conduct was "so severe or pervasive so as to alter the conditions of [her] environment and create a hostile and abusive working environment." *Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009) (internal quotations omitted).

Here, the time gaps between the alleged incidents and their relative lack of severity preclude a viable hostile work environment claim. *See Ngeunjuntr v. Metro. Life Ins. Co.*, 146

F.3d 464, 467 (7th Cir. 1998) ("Relatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment."). Accepting Plaintiffs' version of the facts as true and viewing it in the light most favorable to her, she describes seven to eight discrete, and relatively isolated, incidents consisting of potentially rude reprimands from a supervisor and denials of certain employee privileges to which she had no prior entitlement. Courts have denied hostile work environment claims brought by plaintiffs complaining of much more severe and pervasive conduct. *See, e.g.*, *id.* (affirming grant of summary judgment for employer on hostile work environment claim where plaintiff's supervisor transferred him to another branch, gave him "the finger," threw his belongings into the trash, told office administrators that plaintiff no longer worked at the office, commented that people of the plaintiff's race and religion could not be trusted, and told him to "go back East"); *see also Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 877 (7th Cir. 1999) (detailing the "range of unpleasant and even embarrassing employer actions [found] tolerable" in prior cases, including a case involving "an arbitrary reprimand, exclusion from office activities, assignment to a fallow sales territory, and lack of supervisor support").

Any other claim Plaintiff asserts in addition to retaliatory non-promotion and retaliatory hostile work environment must also fail, either because she failed to timely exhaust her administrative remedies for the discrete actions alleged or because the actions were not "materially adverse." Federal employees claiming discrimination under Title VII must consult an EEO counselor prior to filing a complaint. 29 C.F.R. § 1614.105(a). "Failure to do so equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII." *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006) *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Plaintiff sought EEO counseling on January 28, 2009. (Def.'s 56.1 ¶ 21.) Of her remaining allegations (excluding her non-promotion), only the January 2009 denial of her 3% performance award and the alleged January 2009 threat

12

regarding that award occurred within the 45-day period prior to Plaintiff's seeking counseling. Her other remaining allegations are thus time-barred.

Plaintiff insists that claims involving her pre-2009 allegations are not time-barred for two reasons. First, she argues that the failure to exhaust administrative remedies is an affirmative defense, *see Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006), and that the government waived that defense by failing to assert it in its answer to her complaint, *see* FED. R. CIV. P. 8(c); *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) ("[Rule 8(c)] requires affirmative defenses to be raised in the pleadings."). But the government did assert that defense in its answer: specifically, the government alleged that "Plaintiff is barred from recovering for any alleged discriminatory acts for which she did not timely seek counselor contact and/or exhaust administrative remedies." (Def.'s Answer 1.) Moreover, even if the government had not raised the defense in its answer, a delay in asserting an affirmative defense only waives that defense if plaintiff was harmed or prejudiced as a result. *Curtis*, 436 F.3d at 711. Here, where Plaintiff was given the opportunity to "confront[] the defense in responding to the motion for summary judgment," she has not been prejudiced. *Id.* In addition to her waiver argument, Plaintiff contends that she may properly assert her pre-2009 allegations because they collectively constitute a single unlawful employment action—the creation of a hostile work environment. Plaintiff is correct that a hostile work environment claim can include allegations pre-dating the 45-day period as long as an act contributing to that claim occurred within the filing period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). As the court has ruled above, however, Plaintiff's hostile work environment claim fails on the merits and thus cannot be used to resuscitate any otherwise time-barred claims based on her pre-2009 allegations.

That leaves only Plaintiff's retaliation claim based on the January 2009 denial of the performance award, and Browne's alleged threat that she would never receive such an award. Although that claim is not time-barred, it does not appear to involve "materially adverse" actions.

*See Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) ("An employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee.").

In the retaliation context, an employer's conduct is considered "materially adverse" if it would dissuade a reasonable worker from making a discrimination charge. *Id.* For purposes of a substantive discrimination claim, the Seventh Circuit has held that while the denial of a raise qualifies as a materially adverse employment action, the denial of a bonus does not. *Farrell v. Butler Univ.*, 421 F.3d 609, 614 (7th Cir. 2005) (sex discrimination). "Raises are a normal and expected element of an employee's salary, while bonuses generally are sporadic, irregular, unpredictable, and wholly discretionary on the part of the employer." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (internal citations and quotations omitted) (sex discrimination and First Amendment retaliation). Browne has testified that the decision to grant the award was at her sole discretion in January 2009 (Def.'s 56.1 ¶ 13; Browne Aff. 54), and Plaintiff has not disputed that testimony. (Cooper EEOC Aff. 43.) Indeed, Plaintiff had not received the award during the period spanning 2003 to 2009 (Def.'s 56.1 ¶ 13), demonstrating that it was not "a normal and expected element of an employee's salary." *Lewis*, 496 F.3d at 653. For these reasons, the court concludes that Plaintiff was denied a bonus and not a raise.

Denial of a bonus is likely insufficient to support a claim of substantive discrimination, and the court is uncertain that the denial of the award at issue here would dissuade a reasonable worker from making a discrimination charge. *See Palermo v. Clinton*, 437 F. App'x 508, 511 (7th Cir. 2011) (denial of a "discretionary bonus" is "not sufficient to dissuade a reasonable employee from engaging in protected activity and therefore cannot support [a] retaliation claim"). Even if the denial of the award were actionable, however, Plaintiff has failed to identify any employee whose performance was similar to hers but who nevertheless received the award. She has suggested that Browne's disapproval of her reliance on an "examination coordinator" was invalid, but has not identified any coworker whose similar conduct was not also criticized. To establish a prima facie case of retaliation under the indirect method, a plaintiff is

14

required to show that she "was treated less favorably than a similarly situated employee." *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011) *aff'd*, 133 S. Ct. 2434 (2013). Plaintiff has not made such a showing here.

## CONCLUSION

The court concludes that Plaintiff's claims for retaliatory non-promotion and retaliatory harassment fail on the merits. Any other claims she might assert are either time-barred, are based on incidents that do not support a claim under Title VII, or fail on their merits, as well. The court thus grants the government's motion for summary judgment [55].

ENTER:

Dated: November 24, 2015

_____
REBECCA R. PALLMEYER
United States District Judge